[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12781
Non-Argument Calendar
_____

Agency No. A208-931-288


XIU ZHENG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(April 15, 2020)

Before MARTIN, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Xiu Zheng seeks review of the Board of Immigration Appeals' (BIA) final order dismissing his appeal of an Immigration Judge's (IJ) denial of his claims for asylum and withholding of removal under the Immigration and Nationality Act (INA), and for protection under the Convention Against Torture (CAT).  Zheng argues that the BIA erred in concluding (1) that he did not provide credible testimony; (2) that his corroborating evidence was insufficient to establish a well-founded fear of persecution to qualify for asylum; and (3) that he was ineligible for withholding of removal or CAT protection.  Because substantial evidence supports the BIA's findings, we affirm.

As the facts of the case are familiar to the parties, we will proceed straight to the merits of Zheng's appeal, taking each of his arguments in turn.

## I

"We review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's decision." *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).  "Where the BIA agrees with the IJ's reasoning, we review the decisions of both the BIA and the IJ to the extent of the agreement." *Id.*  "We do not consider issues that were not reached by the BIA."[1]  *Id.*

We review all conclusions of law by the BIA de novo, but we review factual

---

[1] Here, therefore, we need not discuss Zheng's arguments pertaining to the IJ's findings surrounding his church attendance in the United States, as the BIA did not rely on those findings in its order. *Gonzalez*, 820 F.3d at 403.

2

findings under the substantial-evidence test, which requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350–51 (11th Cir. 2009) (internal quotation marks and citation omitted). Likewise, we review credibility determinations under the substantial-evidence test. *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1230–31 (11th Cir. 2006). Under this highly deferential standard, we must affirm the BIA's decision if it is supported by substantial evidence on the record considered as a whole. *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 817–18 (11th Cir. 2004). Factual findings "may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

## II

### A

We will start with the BIA's findings about Zheng's credibility. The BIA must support an adverse credibility determination with "specific, cogent reasons for the finding." *Kueviakoe v. U.S. Att'y Gen.*, 567 F.3d 1301, 1305 (11th Cir. 2009). "The burden then shifts to the alien to show that the credibility decision

3

was not supported by specific, cogent reasons or was not based on substantial evidence." *Id.* (internal quotation marks and citation omitted).

In making a credibility finding, the BIA may base its considerations on "the totality of the circumstances," including "the demeanor, candor, or responsiveness of the applicant[,] . . . the inherent plausibility of [his] account, the consistency between [his] written and oral statements[,] . . . the internal consistency of each such statement, the consistency of such statements with other evidence of record[,] . . . and any inaccuracies or falsehoods in such statements."  8 U.S.C. § 1229a(c)(4)(C).  Indeed, the BIA may rely on these relevant credibility considerations "without regard for whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." *Id.*  The BIA does not have to accept an explanation for an inconsistency simply because the explanation is "tenable." *Chen*, 463 F.3d at 1233.  Additionally, "[t]he IJ alone is positioned to make determinations about demeanor—by observing the alien and assessing his or her tone and appearance—and in that sense is uniquely qualified to decide whether an alien's testimony has about it the ring of truth." *Todorovic v. U.S. Att'y Gen.*, 621 F.3d 1318, 1324 (11th Cir. 2010) (internal quotation marks and citation omitted).

4

**B**

Here, substantial evidence supports the BIA's adverse credibility determination, which was substantiated by specific and cogent findings. Between Zheng's asylum application, his testimony before the IJ, and his mother's reference letter, the BIA identified two discrepancies: First, the BIA noted that there was inconsistent information in the record about how many times the police had visited Zheng's home in China. Specifically, Zheng initially testified that the police had come looking for him three times before he left China, but that he didn't know how many times they had come after he left. Later in that same testimony, though, Zheng testified that his family had told him that the police had come to his home looking for him three times after he left China. Compounding matters, his mother's undated reference letter mentions only one police visit. Although Zheng argued that his mother's letter was written before additional police visits occurred, the BIA and IJ were not required to accept this explanation.[2] *See Chen*, 463 F.3d at 1233. Second, and separately, the BIA observed that Zheng had not fully and accurately described his travel to the United States through Mexico on his asylum

---

[2] In his brief, Zheng notes that the envelope containing his mother's letter was dated January 4, 2017, which he argues supports his story that the letter could have been written before additional police visits occurred. Even assuming that this is true, and that the letter does predate additional police visits made after Zheng left China, that does not fully account for the inconsistencies in his own testimony, or the inconsistencies between the letter and his testimony as to the number of police visits that occurred *before* he left China.

application.  Although Zheng testified that he had entered Mexico on a six-month

work visa, he did not disclose that fact on his asylum application.[3]

Additionally, the BIA held that the IJ had not clearly erred in its

determination that Zheng was not credible based on his "demeanor, candor, and

responsiveness to questions posed."  Although the IJ didn't specifically mention

Zheng's demeanor in his order, he was in the best position to assess Zheng's

behavior and candor at the hearing, and he did note that Zheng's accounting of

events "was not sufficiently detailed and . . . was not a plausible or coherent

account of the basis of his fear."  See Todorovic, 621 F.3d at 1324.  Even though

the IJ's demeanor finding wasn't particularly strong or detailed, the record here

nevertheless does not "compel" a contrary credibility determination in light of the

specific and cogent inconsistencies in the record.

### III

### A

Taking this adverse credibility finding into account, we next address the

BIA's determination that Zheng did not establish a well-founded fear of future

persecution for purposes of his asylum claim.  An alien may be granted asylum if

---

[3] The question at issue on Zheng's asylum application stated as follows:  "Have you . . . ever applied for or received any lawful status in any country other than the one from which you are now claiming asylum?"  In response, Zheng checked the "No" box and wrote the following comment:  "I left from Shanghai, China on May 4, 2016 and arrived at Tijuana, Mexico on May 5, 2016.  I then went from there to California that night."

he or she qualifies as a refugee under the INA.  8 U.S.C. § 1158(b)(1)(A).  A

"refugee" is:

> any person who is outside any country of such person's nationality . . .
> and who is unable or unwilling to return to, and is unable or unwilling
> to avail himself or herself of the protection of, that country because of
> persecution or a well-founded fear of persecution on account of race,
> religion, nationality, membership in a particular social group, or
> political opinion.

*Id.* § 1101(a)(42)(A).

The asylum applicant carries the burden of proving statutory "refugee"

status.  *Id.* § 1158(b)(1)(B)(i).  An applicant must "establish (1) past persecution on

account of a statutorily listed factor, or (2) a well-founded fear that the statutorily

listed factor will cause such future persecution."  *Diallo v. U.S. Att'y Gen.*, 596

F.3d 1329, 1332 (11th Cir. 2010) (internal quotation marks and citation omitted).

Additionally, "[a]n applicant must demonstrate that his or her fear of persecution is

subjectively genuine and objectively reasonable."  *Yang v. U.S. Att'y Gen.*, 418

F.3d 1198, 1202 (11th Cir. 2005) (internal quotation marks and citation omitted).

"The subjective component is generally satisfied by the applicant's credible

testimony that he or she genuinely fears persecution."  *Id.* (quotation omitted).

And, "[i]n most cases, the objective prong can be fulfilled either by establishing

past persecution or that he or she has a good reason to fear future persecution."  *Id.*

(internal quotation marks and citation omitted).  The applicant must "present

specific, detailed facts showing a good reason to fear that he or she will be *singled*

7

*out* for persecution on account of . . . a protected activity." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005) (internal quotation marks and citation omitted).

"The testimony of an applicant, if found to be credible, is alone sufficient to" sustain the burden of proof. *Id.* at 1287. "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application." *Id.* All corroborating evidence must still be considered, though, when evaluating an asylum application after an adverse credibility determination has been made. *Id.* "The weaker an applicant's testimony, however, the greater the need for corroborative evidence." *Yang*, 418 F.3d at 1201.

## B

Substantial evidence supports the denial of Zheng's asylum claim, as a reasonable factfinder could determine that Zheng's corroborating evidence was insufficient to meet his burden of proof, particularly in light of the adverse credibility finding. First, Zheng conceded that he did not suffer from past persecution, so he needed to establish a well-founded fear of *future* persecution to qualify for asylum. *See Diallo*, 596 F.3d at 1332. In support of his claim, Zheng presented a significant amount of evidence to corroborate what happened to him and his classmates in China, as well as evidence of his practice of Christianity in

the United States, and country-condition reports detailing the negative treatment of Christians in China.

The BIA, however, adopted the IJ's finding that some of Zheng's corroborating evidence appeared fabricated—specifically his mother's reference letter and the affidavits of two colleagues who had been arrested for distributing Christian flyers. This finding seems to have been based on the previously discussed discrepancies between Zheng's testimony and his mother's undated letter, as well as the affidavits' overall generality and lack of detail. The BIA further found that although the country-condition reports Zheng submitted did show that Chinese authorities were hostile to Christians in some regions of the country, and he had submitted evidence that he had been baptized as a Christian, that evidence didn't independently establish a sufficient fear or probability of future persecution, particularly in light of the adverse credibility determination.

Under the highly deferential substantial-evidence standard, we cannot say that the record "compels" a different finding. As a result, Zheng has not met his burden to show a well-founded fear of future persecution. *See Adefemi*, 386 F.3d at 1027.

## IV

Finally, we briefly discuss the denial of Zheng's applications for withholding of removal and CAT protection. Under the withholding of removal

statute, an alien shall not be removed to a country if his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "The alien bears the burden of demonstrating that it is 'more likely than not' [he] will be persecuted or tortured upon being returned to [his] country. This is a more stringent standard than for asylum." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005) (quotation omitted).

An applicant seeking protection under CAT must show "that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004) (internal quotation marks omitted) (quoting 8 C.F.R. § 208.16(c)(2)). Additionally, the alien must show that the torture would be by, or with the acquiescence of, the government. *Id.* If an applicant fails to meet his burden to prove eligibility for asylum, he cannot meet the higher standards for withholding of removal or CAT protection. *See Forgue*, 401 F.3d at 1288 n.4.

Because we've held that Zheng did not meet his burden of proof for asylum eligibility, he is likewise ineligible for withholding of removal or CAT protection. *See id.*

**PETITION DENIED**

10